CITIZENS' STATE BANK OF MONROEVILLE *v.* KALAMAZOO COUNTY BANK.

1. Banks and Banking—Transfer of Stock—Liens.
    The lien of a bank on a stock certificate issued by it, for a debt of the registered holder which is due and unpaid at the time of a demand by a purchaser of such certificate for a transfer thereof on the books of the bank, is superior to. the right of the purchaser, under 3 How. Stat. § 3208*a*8, providing that no transfer of stock shall be valid against a bank, nor shall any transfer be made upon its books, so long as the registered holder shall be liable to the bank for a debt which is due and unpaid.  *Michigan Trust Co.* v. *State Bank of Michigan, ante,* 306, followed.

2. Same—Foreclosure of Lien—Equity.
    The court has jurisdiction to award foreclosure of the lien, upon the defendant's cross-bill, in a suit by the purchaser to compel the transfer of the stock upon the books of the bank, although the registered holder is not a party to the suit, where no personal decree is sought.

3. Same—Copartnership Debt—Construction of Statute.
    Such lien extends to the holder's liability to the bank on a debt of a copartnership of which he is or has been a member, since the statute expressly covers a liability as principal debtor, surety, "or otherwise."

4. Same—By-Laws—Waiver of Lien.
    A by-law providing that any stockholder desiring to sell his stock shall give the bank 10 days to purchase or find a purchaser, and at the expiration of such time may "sell at pleasure," does not operate as a waiver of the right of the bank to claim a lien, as against a purchaser of the stock, for a debt of the registered holder.

Appeal from Kalamazoo; Buck, J. Submitted October 22, 1896. Decided December 24, 1896.

Bill by the Citizens' State Bank of Monroeville, Indiana, against the Kalamazoo County Bank and Elias W.

Bowman, president and general manager, to compel the transfer to complainant of certain certificates of stock. The defendant bank, in its answer, claimed a lien upon the stock, and asked to have the lien foreclosed. From a decree dismissing the bill and denying the order of foreclosure, all parties appeal. Modified by an award of foreclosure, and affirmed.

*Osborn, Mills & Master*, for complainant.

*Boudeman & Adams*, for defendants.

LONG, C. J. The bill of complaint was filed to compel the defendant bank to transfer upon its books certain certificates of its capital stock held by the complainant by an assignment from the original owners of the stock.

Prior to March 1, 1893, a copartnership, consisting of Zimri Dwiggins, J. M. Starbuck, and others, was carrying on a banking business at Schoolcraft under the name of the Kalamazoo County Bank of Dwiggins, Starbuck & Co. At the same time, a copartnership, consisting of Zimri Dwiggins, J. M. Starbuck, and others, was carrying on a banking business at Richland under the name of the Union Bank of Richland, Mich., Dwiggins, Starbuck & Co.; and a copartnership, consisting of Zimri Dwiggins, J. M. Starbuck, and others, was carrying on a banking business at Edwardsburg under the name of the Citizens' Bank of Dwiggins, Starbuck & Co. About March 1, 1893, the Schoolcraft bank went out of business, and a corporation was formed under the name of the Kalamazoo County Bank, the defendant in this case, of which the president and manager is E. W. Bowman, who was a member of the three banking firms above mentioned. The capital stock of the defendant bank is $20,000.

Prior to the organization of the defendant bank, it is claimed that Mr. Bowman, acting for the copartnership bank at Schoolcraft, made an arrangement by which the new corporation agreed to take the assets of the Kalama-

zoo County Bank of Dwiggins, Starbuck & Co. It is also claimed on the part of the defendants that, at the time this arrangement was entered into, the Kalamazoo County Bank of Dwiggins, Starbuck & Co. agreed to guarantee the collection of all accounts, and the payment of all commercial paper; that, upon the formation of the defendant bank, its capital stock was made up of said assets and a bonus paid by certain of the citizens of Schoolcraft and its vicinity, and stock was issued to the gentlemen whose names are mentioned in the articles of association. Ten shares thereof were issued to Zimri Dwiggins, and ten shares to J. M. Starbuck. They each continued to own their stock until May 26, 1893, when each assigned his stock to the complainant as collateral security to an indebtedness due from them to complainant. This assignment has not been attacked in any manner, nor has it been contended or shown that the complainant had any notice or knowledge of any equities existing as between the defendant bank and Zimri Dwiggins or J. M. Starbuck. The complainant claims to be a good-faith holder of the stock. At the date set forth in the bill of complaint, the complainant demanded of the defendant bank a transfer of the stock upon the books of that bank, but this was refused upon the ground that the defendant bank claimed a lien upon the stock as against Zimri Dwiggins and J. M. Starbuck, to whom it was issued.

The answer alleges that on May 26, 1893, being the date when complainant claims it took its assignment of the stock, and for some time prior thereto, J. M. Starbuck and Zimri Dwiggins were registered holders of the stock, and were indebted to the said Kalamazoo County Bank upon an indebtedness which was due and unpaid. The answer also asserts a lien upon the stock on account of this alleged indebtedness, and prays as relief, by way of cross-bill, that the stock be surrendered to a receiver, the alleged lien foreclosed, and the stock sold, and the avails turned over to the defendant bank. The proofs were

taken in open court. On April 18, 1896, an opinion was filed directing the dismissal of complainant's bill, with costs. A decree was entered which not only dismissed complainant's bill of complaint, but established a lien in favor of the defendant bank as against the stock, the language of the decree being as follows:

"And it now appearing to the court that, at the time of the transfer and assignment by Zimri Dwiggins and J. M. Starbuck, respectively, to complainant, of the bank stock, as set forth in said bill of complaint, they were each indebted, as copartners, to the defendant, the Kalamazoo County Bank, upon the matters mentioned by defendants in their answer, and that the said Kalamazoo County Bank was then entitled to the benefit of a lien upon said stock to the extent of said copartnership indebtedness, and that complainant took said stock subject to said lien, it was not and is not, therefore, entitled to the relief prayed in and by the bill of complaint. *Therefore*, it is ordered, adjudged, and decreed, and the court doth order, adjudge, and decree, that the prayer of said bill of complaint be, and the same is, denied, and that said bill of complaint be, and the same is, dismissed."

The decree denies defendants' prayer for a foreclosure of the lien for the reason that the parties interested in the indebtedness upon which it is predicated are necessary parties, and are not all before the court, and cannot properly be brought in and made parties.

Both parties appeal.

It was insisted in behalf of the complainant in the court below, and is still insisted:

1. That the defendant bank could not be entitled to a lien upon this stock on account of an unliquidated copartnership indebtedness which might be due from Zimri Dwiggins and J. M. Starbuck, the original holders of it, as copartners with others.

2. That if, upon the proofs, the court found that the defendant bank had *prima facie* a lien against the stock, it could not litigate or establish such lien in this suit, and that no decree establishing a lien upon the stock could be entered, for the following reasons: (*a*) The debt upon which the lien is claimed was not the sole or

separate indebtedness of Zimri Dwiggins or J. M. Starbuck, but a copartnership indebtedness arising out of copartnership dealings between several persons who are not parties to this suit, and which was unadjudicated and unsettled.   (*b*) The parties are entitled to be heard as to that indebtedness and their liability in a court of law, where the issue can be tried before a jury.   (*c*) The complainant was not and could not be in a position to litigate such alleged indebtedness, or to assert the defenses which would be available in a suit at law.

The defendant, as a banking corporation organized under the general banking laws of this State, asserted its lien under that law, which provides:

"The shares of stock of such bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct; but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety, or otherwise to the bank for any debt which shall be due and unpaid, nor in such case shall any dividend, interest, or profits be paid on such stock so long as such liabilities continue, but all such dividends, interest, or profits shall be retained by the bank, and applied to the discharge of such liabilities; and no stock shall be transferred on the books of any bank without the consent of the board of directors, where the registered holder thereof is in debt to the bank for any matured and unpaid obligations." 3 How. Stat. § 3208*a*8.

It was and is insisted that this statute was not intended to give a lien upon the stock of the banking corporation to secure the payment of any such indebtedness as is involved in the contention of the defendant bank, but that the statute refers to debts created with the banking corporation after its organization as such.

The certificates of stock provide that they shall be transferable "only on the books of the company, personally, or by attorney, on the surrender of the certificate." By-law 12 of the defendant bank is as follows:

"Any stockholder desiring to sell his or her shares of stock in this corporation shall notify the president or cashier of such fact, and give him and the board of

directors 10 days to purchase or find a purchaser for said stock; at the expiration of said 10 days' time, the stockholder may then sell at pleasure."

It is insisted that this by-law is a waiver of the statutory lien in defendant's behalf. It is also insisted that, if it shall be found that the defendant bank had a *prima facie* lien upon this stock to secure the payment of a copartnership indebtedness for which Dwiggins and Starbuck as copartners might be liable, nevertheless complainant, as the assignee of that stock, is entitled to have the stock transferred upon the books of the company, subject to such lien, and until a foreclosure thereof, in order that it may vote the stock and have a voice in the management of the affairs of the bank.

At the hearing the defendants claimed, and offered proofs, which were objected to, tending to show, that, at the time of the sale of the assets of the Kalamazoo County Bank of Dwiggins, Starbuck & Co., that copartnership guaranteed the payment of the commercial paper and accounts turned over by it to the defendant bank upon its organization as a banking corporation; that the defendant bank did business directly with the Citizens' Bank of Edwardsburg and the Union Bank of Richland, both of which were copartnerships in which Zimri Dwiggins, J. M. Starbuck, some of the officers of defendant bank, and others were interested, until those banks failed, in May, 1893; that at that date they owed defendant bank as follows: The Citizens' Bank of Edwardsburg $806.34, and the Union Bank of Richland $1,319.32.

To recapitulate complainant's claim, it is insisted:

1. That it was entitled, upon the proofs, to the transfer of the stock as prayed.

2. That if defendant bank might, under the statute, claim a lien as against this stock, such lien was waived by the form of the stock certificate and defendant's by-law No. 12.

3. That the decree, in any event, is erroneous in so far as it adjudicates a lien as against complainant's stock.

4. That defendant bank is not entitled to a foreclosure of this alleged lien, and that the decree of the court below was in that respect correct.

5. That, assuming defendant bank has a *prima facie* lien on the stock, complainant is entitled to have the stock registered upon the books of the bank, subject to the lien, when established.

It was held in *Michigan Trust Co.* v. *State Bank of Michigan, ante,* 306, that third parties purchasing stock of a registered holder could not compel a transfer of the stock upon the books of the bank issuing it, when it appeared, at the time of such demand of transfer, that the registered holder of such stock was liable as principal debtor, surety, or otherwise to the bank for any debt which should at that time be due and unpaid. In the present case it appears that the debt was due and unpaid at the time the demand was made; so this case upon that point is ruled by the case cited. The reasons are fully set out in that case.

The contention that the registered holders are members of a copartnership, and that the indebtedness is due from such copartnership, and not from the holders of the stock individually, has no force, as we must give some meaning to the term "or otherwise." The statute is plain, and covers all indebtedness, whether as principal debtor, surety, or otherwise. The rule under such statutes, where a lien is created, is that the lien is a general one, and secures all debts due from stockholders or firms of which they are members, even when the debts grow out of transactions not connected with their shares, and though the stockholders are but sureties for debts, and though they are created after the transfer without notice to the corporation. 23 Am. & Eng. Enc. Law, p. 693. This doctrine is fully supported. So we say of this statute it is broad enough to cover the indebtedness here claimed. We are of the opinion that it was the intent of the legislature in the passage of this statute to create a lien upon the registered stock for all such debts; that when the

debt matured and remained unpaid, and the stock remained in the name of the registered holder upon the books of the bank, he could not, and a third party could not, compel the transfer of the stock upon the books of the bank, until the lien was paid and discharged. This question was substantially disposed of in *Michigan Trust Co.* v. *State Bank of Michigan, supra.*

It is not necessary to decide in this case whether a lien was created upon the stock when the debt to the bank arose; and we only hold that it became a lien when the indebtedness matured and remained unpaid; that at that time it became and was a prior lien over any lien acquired by a third party by transfer of the stock prior to that time. The party taking a transfer of bank stock must be held to know that it is subject to any debt at the bank where the stock is registered, and that, when that debt matures, the bank has the right to enforce that lien. *National Bank* v. *Watsontown Bank,* 105 U. S. 217; 1 Cook, Stock, Stockh. & Corp. Law, § 530. We need go no further in the present case upon the facts proved.

It is claimed that by-law 12, above set forth, waived any lien which the bank had. It is evident from the reading of the by-law that the bank did not intend to waive its lien upon stock; and we think it cannot be construed as waiving the lien.

We think the court below was not in error in finding that the defendant bank had a lien upon the stock, and properly dismissed complainant's bill.

Defendants, however, have filed a cross-bill, asking that the bank might be permitted to foreclose its lien in this proceeding. This the court denied, and from this part of the decree defendants appealed. The position of the court below was that the necessary parties were not before the court. In this we think the court was in error. Dwiggins and Starbuck had assigned all their interest in the stock to the complainant, and it had the right in this proceeding to show that there was no indebtedness from them to the bank. This subject was gone into on the

hearing, and found against the complainant. The defendant bank was making no personal claim in this proceeding against Dwiggins and Starbuck. It was simply claiming it had a lien upon the stock for an indebtedness equal to the value of the stock. This was established to the satisfaction of the court. The court had jurisdiction to award foreclosure of the lien, and should have done so, as no personal decree was sought against Dwiggins and Starbuck. *Miller* v. *Thompson*, 34 Mich. 10.

The decree will be modified in this respect, and affirmed. Defendants will recover their costs of both courts.

GRANT, HOOKER, and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.