FIRST NATIONAL BANK OF ELIZABETH CITY v. G. M. SCOTT.

(Decided December 13, 1898.)

*Bank Debt—Collaterals—Endorsers.*

The proceeds of collateral securities deposited to secure a note at Bank must be applied to the payment of the note in exoneration of the endorsers, and not diverted to the payment of other debts of the maker.

CIVIL ACTION against the defendant as endorser of two notes payable to the bank for $1,000 each, dated respectively March 14th, 1895, at 4 months after date, and May 27th, 1895, at 90 days after date, executed by the Jones M'f'g Co., and endorsed by the defendant, and also by G. B. Jones and T. W. Jones who are not sued.

These notes were renewals—the original notes were dated and endorsed Nov. 8, 1894, and January 26, 1895. There were no payments entered upon the said notes at time suit was brought—subsequently under date of September 18, 1897, a credit on each was endorsed thus: "Rec'd on within note $513.14, being part of amount rec'd from J. M. Scott, Receiver, from the $8,000 note."

These credits the plaintiff contended were all that the notes were entitled to; the defendant contended they were satisfied in full.

The facts, as agreed, are as follows:

On Dec. 20, 1894, The Jones Manufacturing Co., executed a note payable 8 months after date for $8,000 to J. B. Jones and T. W. Jones, and to secure it gave them a mortgage on its property.

On April 23, 1895, The Jones Manufacturing Co., executed its note to the Bank for $5,000 at 4 months after date, which was discounted, with T. W. Jones and G. B. Jones, endorsers, and as collateral security to this note, the note and mortgage of $8,000 above stated, were lodged with written pledge to furnish additional collaterals at any time on demand—"the net proceeds of this sale of the above securities may be applied either on this note, or any other note of our liabilities or engagements held by said Bank, as its President or Cashier may elect; and we the maker or makers hereby waive the benefit of our homestead exemptions as to this debt and contract."

Signed: THE JONES MANUFACTURING CO.
Endorse: T. W. JONES,
G. B. JONES.

The Jones Manufacturing Company failed and went into the hands of a Receiver, the defendant Scott, who foreclosed the above $8,000 mortgage, held by the Bank as collateral security for the $5,000 note, and he paid the $8,000 into Bank—with which they paid off the $5,000, leaving $3,000 over, which the bank apportioned among the two notes in suit, and other notes it held on the Jones Manufacturing Co., upon which were no endorsers and which amounted to $2,295.

His Honor, *Brown, J.*, who tried the case at January Special Term, 1898, of PASQUOTANK County submitted two issues to the jury.

1. Was it agreed between G. B. Jones acting for himself and the Jones M'f'g Co. at the time of the defendant's endorsement of the notes of said company sued on in this action, that said defendant should be secured and indemnified as to his said endorsement to the plaintiff bank, by the security of the said $8;000 note and trust deposited as collateral with plaintiff, subject to the prior lien of the $5,000 loaned thereon by the Bank?

The jury say, Yes.

2. Did the plaintiff Bank, while holding said $8,000 note and trust, have notice of said agreement prior to April, 25, 1895, after which date the $2,295 notes were purchased?

The jury say, No.

Upon these findings of the jury, both sides claimed the judgment of the Court.

His Honor gave judgment that defendant go without day and recover his costs.

Plaintiff excepted and appealed.

*Mr. E. F. Aydlett*, for plaintiff (appellant).
*Messrs Pruden & Pruden*, and *Shepherd & Busbee*, for defendant.

DOUGLAS, J.:  This is an action to recover from the defendant the balance due on two notes for $1,000 each, executed on the 14th day of March, 1895, to the plaintiff by the Jones Manufacturing Company, and endorsed by the defendant together with G. B. and T. W. Jones, who are not parties to this action.

The Jones Manufacturing Company executed to G. B. and T. W. Jones, on December 20, 1894, its note for $8,000 secured by mortgage.  On the 23rd day of April,

BANK *v.* SCOTT.

1895, the said company executed and delivered to the plaintiff the following paper :

$5,000.        ELIZABETH CITY, N. C., April 23, 1895.

Four months after date we promise to pay to the FIRST NATIONAL BANK, ELIZABETH CITY, N. C., or order, negotiable and payable without offset at said Bank, Five Thousand Dollars in gold coin, for value received, having deposited with said Bank, as collateral security for the payment of this note, a note of the Jones Manufacturing Co., for $8,000, dated Dec. 20th, 8 months from date, indorsed by G. B. and T. W. Jones; insurance policies for $5,000; loss if any payable to this bank, with such additional collaterals we hereby promise to give at any time on demand. If these additional collaterals be not so given when so demanded, then this note to be due; and rebate of interest taken shall be allowed on payment prior to maturity. And we hereby give to said Bank, its President or Cashier, full power and authority to sell and assign and deliver the whole or any part of said collaterals or any substitutes therefor, or any additions hereto, at public or private sale, at the option of said Bank, or its President or Cashier, or of either of them, on the non-performance of the above promises, or any of them, or at any time thereafter, and without advertising or giving to us any notice or making any demand of payment.

It is also agreed that said collaterals may from time to time, by mutual consent, be exchanged for others which shall also be held by said Bank on the terms above set forth; and that if we shall come under any other liability, or enter into any other engagement with said Bank while it is the holder of this obligation, the net proceeds of the sale of the above securities may be

applied either on this note or any other note of our lia-
bilities or engagements held by said Bank, as its Presi-
dent or Cashier may elect; and we the maker or makers
hereby waive the benefit of our homestead exemptions
as to this debt and contract.

THE JONES M'F'G CO.,

G. B. JONES, Secy. & Treas.,

T. W. JONES, President.

And the following endorsements on the back :

"T. W. JONES,

G. B. JONES."

> March 27th, 1897.   Received on within note
> $4,704.50, being bal. of $7,000.00 rec'd from
> G. M. Scott, Receiver of the Jones Manufac-
> turing Co., which was credited upon the
> $8,000.00 note.

> September 18th, 1897.   Rec'd on within note
> $792.30, bal. of principal and interest due to
> date, being part of amount received from G.
> M. Scott, Receiver, from the $8,000.00 note.

The said G. B. and T. W. Jones endorsed this note,
and also endorsed and deposited with the plaintiff, as
security therefor, their note upon the company for
$8,000.

The issues and judgment, which recite nearly all the
material facts, are as follows:

"1. Was it agreed between G. B. Jones acting for him-
self and the Jones Manufacturing Co., at the time of the
defendant's endorsement of the notes of said com-
pany sued on in this action that said defendant should
be secured and indemnified as to his said endorsement
to the plaintiff Bank by the security of the said $8,000

note and trust deposited as collateral with plaintiff, subject to the prior lien of the $5,000 loaned thereon by the Bank?    :

Answer—Yes.

2. Did the plaintiff Bank, while · holding said $8,000 note and trust, have notice of said agreement prior to April 23, 1895, after which date the $2,295 notes were purchased?

· Answer—No.

### JUDGMENT.

This cause came on to be heard before the Court and jury.

The issues hereto annexed were submitted to the jury without objection. No other issues being tendered.

The jury having answered first issue Yes and second issue No, both the plaintiff and defendant move for judgment. It is admitted that the sum unpaid on the notes sued is $1,248.71 dollars, and that if the plaintiff is entitled to judgment at all, the defendant admits that the plaintiff is entitled to judgment for only two-thirds of said sum. The plaintiff moves for judgment for the entire sum. The defendant moves for judgment that he go without day and that defendant recover costs. It is admitted that the plaintiff received and collected the whole of the $8,000 note and interest, referred to in the evidence and pleadings, to-wit: $8,818 and that plaintiff applied $5,496.80 of the said sum to the $5,600 note and interest referred to in the evidence, and that plaintiff then applied $2,295 to certain notes dated on and after April 23, 1895, issued by Jones Manufacturing Co. for logs, &c., to certain other individuals and purchased and discounted by the plaintiff after April 23, 1895, and that neither T. W. Jones,

G. B. Jones nor Geo. M. Scott were sureties, or endors-
ers, or in any way liable for said $2,295 notes.

It is admitted that the plaintiff applied what was left,
to-wit: $1,026.27 to notes sued on in this action leaving
the balance of $1,248.71 and that if the bank shall ap-
ply said excess after paying the $5,000 note to notes sued
on, in preference to the $2,295 notes it is more than suffi-
cient to pay the notes sued on in full.

It is admitted that the notes sued on are renewals and
that the originals were dated and executed November
9th, 1894, and January 26, 1895, and the originals and
renewals were executed to plaintiff by Jones M'f'g. Co.,
a corporation, and endorsed as sureties by T. W. Jones,
G. B. Jones, Geo. M. Scott.

It is not denied that the agreement found by jury on
1st issue was made prior to the purchase by the Bank
of the $2,295 notes. That is admitted.

It is admitted that on April 20, 1896, the plaintiff
brought an action against Gordon B. Jones, one of the
endorsers upon the notes sued on in this action to re-
cover on his said endorsement, in the Circuit Court of
Accomack Co., Virginia, which Court had jurisdiction of
the parties and of the cause of action, the defendant
Jones being duly before said court, and that the jury
therein found for said defendant G. B. Jones and that
the court adjudged that the plaintiff take nothing
against said Jones. The record in said action is evi-
dence on this trial and is made a part of this finding.

The court is of opinion. That according to the terms,
in writing, upon which T. W. & G. B. Jones, assigned
the $8,000 note to plaintiff, it had no authority to apply
the excess after paying the $5,000 note to the $2,295
notes, in preference to the notes sued on for which the
said T. W. & G. B. Jones and this defendant were

BANK *v.* SCOTT.

liable. Said written contract is hereto attached. It is a renewal of the original and in same words. Original was dated Dec. 20th, 1894. Both the original and this renewal are signed alike and endorsed on back "T. W. & G. B. Jones."

The court is further of opinion. That the evidence does not tend to prove and is insufficient to show that the $8,000 note and deed in trust were not the property of T. W. & G. B. Jones; on their face they purport to be, and that if this is erroneous no issue was tendered by plaintiff embodying such contention.

Upon the issues as found and the admitted facts and the evidence as a whole, the court is of opinion and so adjudges, that the excess of the proceeds of the $8,000 note after paying the $5,000 note should be applied to payment of notes sued on which cancels and discharges them in full and that it matters not whether the plaintiff had notice or not of the agreement embodied in first issue.

It is adjudged that plaintiff take nothing by its writ and that defendant go without day and recover costs to be taxed by Clerk.

*Upon the foregoing facts we are of the opinion* that every principle of law as well as of good conscience requires us to affirm the judgment. As held by the Court below, the $8,000 note presumably belonged to the Joneses as it was payable to them, and the manufacturing company could not hold its own paper. As this presumption appears from the face of the note, it is binding upon the plaintiff. The plaintiff is therefore placed in the position of taking the money belonging to the Joneses and instead of applying it to the notes now in suit upon which they are jointly liable, using it with-

out authority, to pay notes with which they had no connection. The pretended authority claimed by it under the collateral note has no existence in law or equity. The plaintiff then sues the defendant upon the notes which it should have paid with the surplus of the $8,000 note. It is true the two Joneses are not sued in this action, and that one of them appears to have successfully defended a suit in the State of Virginia, which might perhaps be pleaded in estoppel; but the plaintiff argues expressly that the defendant would have his redress against his co-sureties, the Joneses, at least one of whom would apparently have no defence.

The plaintiff also argues that as neither the principal nor sureties applied the $8,000, it had a right to do so. Undoubtedly, but only to the debts upon which the owners of the money were liable. The plaintiff lays stress upon the fact that the collateral note "commences with *We* and speaks *Our*," and contends that these words refer exclusively to the company and *its* liabilities. If this is true, it does not help the plaintiff, as it excludes the idea that the endorsers are parties to the agreement. If they are not parties to the agreement, then they are liable only as endorsers, and their money is liable only for their obligations under that particular endorsement. If, on the contrary, the endorsers are parties to this complicated agreement, then the word "our" refers only to their joint obligations.

Again, admitting the contention of the plaintiff that the words "we" and "our" in the collateral note refer exclusively to the company, we find the said company specifically *waiving the benefit of its homestead exemptions.* We are not advised as to the nature and extent of a corporate homestead, the existence of which we did not even suspect.

In *Boyd* v. *Redd.* 120 N. C., 335, this Court held that a statute which gives to a bank a lien on the stock of a stockholder indebted to it, is in derogation of common right and must be strictly construed; and that "the statutory lien on stock is intended only to secure the direct indebtedness which the stockholder creates with the corporation, either as principal or surety, and not any involuntary indebtedness to it caused by the purchase of his liabilities incurred to third parties." This rule is equally applicable to the case at bar. Under this view of the law, we are not required to pass upon the validity of the many-faced but essentially one-sided contract relied upon by the plaintiff; but we cannot be expected to give a latitudinarian construction to an instrument so inequitable upon its face, and which we are compelled to say has been used as the cover for an unlawful and oppressive diversion of the funds belonging to an endorser. The judgment is affirmed.

Affirmed.